Filed 12/15/15  P. v. Jeske CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DANIEL EDWARD JESKE, <br><br>     Defendant and Appellant. | H041130 <br> (Monterey County <br> Super. Ct. No. SS130274A) |
| In re DANIEL EDWARD JESKE, <br><br>     on Habeas Corpus. | H042424 <br><br><br> ORDER MODIFYING OPINION <br> NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on November 30, 2015, be modified in the following particulars:

On page 15, the last full paragraph, the second sentence is modified to read: "For example, after holding an evidentiary hearing on the matter, the trial court may determine that a jury would not have found Lowe to be credible and that there is no reasonable probability that defendant would have received a more favorable outcome even if she had testified."

There is no change in judgment.

Dated:_____    _____
                                          Premo, J.


_____           _____
        Rushing, P.J.                     Elia, J.

Filed 11/30/15  P. v. Jeske CA6 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL EDWARD JESKE,<br><br>    Defendant and Appellant. | H041130<br>(Monterey County<br>Super. Ct. No. SS130274A) |
| In re DANIEL EDWARD JESKE,<br><br>    on Habeas Corpus. | H042424 |

A jury convicted defendant Daniel Edward Jeske of residential burglary (Pen. Code, § 459).[1]  On appeal, defendant argues that his trial counsel rendered ineffective assistance when he failed to request that the jury be instructed that a criminal defendant cannot be convicted based solely on DNA evidence if the DNA evidence is found on a moveable object at the crime scene.  In a separate petition for writ of habeas corpus, defendant also argues that his trial counsel rendered ineffective assistance when he failed to call defendant's mother to testify as an alibi witness during the trial.

For the reasons set forth below, we reject defendant's claim of ineffective assistance of counsel on appeal.  However, we find that defendant has stated a prima

---

[1] Unspecified statutory references are to the Penal Code.

facie case for relief in his accompanying petition for writ of habeas corpus. Therefore, we issue an order to show cause returnable to the superior court.

FACTUAL AND PROCEDURAL BACKGROUND

*The Information*

On May 2, 2013, defendant was charged by information with a count of residential burglary (§ 459). It was also alleged that he had served a prior prison term under section 667.5. Defendant pleaded not guilty and the matter proceeded to trial.

*The Prosecution's Case*

In March 2012, John Mims and his wife, Tamara Mims, lived with their children in a house.[2] John and Tamara both smoked cigarettes, and the cigarettes they smoked had an orange filter. Neither John nor Tamara smoked inside the house. They only smoked outside in a designated area in the backyard.

On March 20, 2012, John took a shower in the master bedroom in the morning and left for work. John said that there were no cigarette butts in the shower area when he left the house that morning. While at work, John received a phone call from his housekeeper, Eldemira Nolasco. Nolasco asked John to come home, because something seemed amiss in the house. Nolasco said that the drawers were open and that it appeared that items may be missing.

John testified that when he arrived back home, parts of the house seemed undisturbed but other parts appeared to have been ransacked. Tamara's jewelry box had been mostly emptied. John's jewelry box had been opened. Various items had been taken from the house, including laptop computers, camera equipment, and clothing. John called his wife and the police.

---

[2] Since John and Tamara share the same surname, we refer to them by their first names for clarity.

2

Nolasco said that when she initially came to the Mims's house, she did not see anything out of the ordinary outside the house and she did not see anybody else around. However, when she went inside the house she saw that cupboards had been opened and the Mims's credit cards were on the floor. She also noticed that the jewelry box in the master bedroom's closet had been emptied. The day prior to the burglary there were approximately 200 to 300 pieces of jewelry in the box.

Nolasco discovered a cigarette butt on the floor of the bathroom in the master bedroom. Nolasco said that she did not think the cigarette butt belonged to John or Tamara, because it was a white cigarette. John also said that he did not think the cigarette butt belonged to him or his wife, because it did not have an orange-colored filter. John asserted that nobody touched the cigarette butt before the police arrived. Nolasco initially swept the cigarette butt and some hair into a pile, but John told her not to touch anything so she left the pile alone. Tamara, who had taken a shower in the master bedroom before she left for work, said that she did not see a cigarette butt in the bathroom area that morning.

That same day, Monterey Police Department Officer Ravinder Bal arrived at the house in response to the burglary. Bal said that Nolasco directed him to the cigarette butt that had been found on the floor of the bathroom. Bal wore gloves and collected the cigarette butt into evidence. He also dusted the door handles for fingerprints and attempted to obtain DNA from the door handles. No fingerprints or DNA were found on the door handles.

John and Tamara created a list of the items missing from their house for insurance purposes. Included on the list were various pieces of jewelry that had been taken during the burglary. Tamara said that she was missing a jade pendant. However, Tamara did not list the jade pendant on the form submitted to the insurance company. She explained that their insurance policy had a $2,500 limit for missing jewelry, so listing items beyond

3

the limit would not have served a purpose. At trial, Tamara identified a jade pendant taken from defendant's bedroom as the one taken from her house.

Criminalist Sarah Calvin testified at trial. She tested the DNA obtained from the cigarette butt and obtained a profile. Calvin asserted that the DNA was a match to defendant.

*The Defense*

Defendant testified on his own behalf. He said that he had purchased the jade pendant that was found in his bedroom and furnished a receipt from a store showing the purchase of a silver charm, a pin with a jade stone, and a silver rope chain. Defendant asserted that he did not know why the sales clerk identified the pendant as a "pin" on the receipt. He said that he had bought the items so that his daughter could wear the jade piece as a necklace.

Defendant further stated that he did not smoke cigarettes. He smoked loose tobacco, which does not produce the kind of cigarette butt found in the Mims's house.

Defendant denied that he was ever in the vicinity of the Mims's house. It was stipulated that there was a GPS device lawfully attached to defendant's car the day of the burglary. The GPS device showed that defendant's car was not close to the Mims's house at the time the crime occurred.

Defendant said that he was at home with his mother, Ramona Lowe, at the time of the burglary. Lowe was not called to testify during the trial.

*The Verdict and Sentencing*

After the trial, the jury found defendant guilty of residential burglary. Defendant waived his right to a jury trial on the prior prison conviction, which the court later found to be true.

The court sentenced defendant to the upper term of six years for the burglary. The court also struck the one-year enhancement imposed under section 667.5, subdivision (b)

4

pursuant to section 1385. Defendant was awarded 50 days of conduct credit and 51 days of actual custody credit for a total of 101 days. The court also imposed a restitution fund fine of $500 under section 1202.4, subdivision (b) and imposed and suspended a matching $500 parole revocation fine under section 1202.45. Defendant was ordered to pay restitution to the victim in an amount to be determined. The trial court retained jurisdiction for the purposes of determining restitution. Defendant appealed.

## DISCUSSION

On appeal, defendant argues that his trial counsel rendered ineffective assistance of counsel when he failed to request that the jury be instructed that a criminal defendant cannot be convicted based solely on DNA evidence if the DNA evidence is found on a moveable object at the crime scene. In his petition for writ of habeas corpus, defendant claims that his trial counsel also rendered ineffective assistance when he failed to call his mother, Lowe, to testify in order to corroborate his alibi. We address these claims separately.

1. *Overview of Principles Governing Ineffective Assistance of Counsel Claims*

To succeed on a claim of ineffective assistance of counsel, defendant must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and that defendant was prejudiced thereby. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *Strickland v. Washington* (1984) 466 U.S. 668, 684 [discussing federal constitutional rights]; *People v. Pope* (1979) 23 Cal.3d 412, 422 [discussing both state and federal constitutional rights].)

" 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if

5

difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.)

"In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver*, *supra*, 26 Cal.4th at p. 926.)

We " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " (*In re Jackson* (1992) 3 Cal.4th 578, 604, quoting *Strickland v. Washington*, *supra*, 466 U.S. at p. 697.) A defendant establishes prejudice by demonstrating that without the deficient performance there is a reasonable probability the result would have been more favorable. In other words, even if counsel's actions fall below the threshold of reasonableness, a defendant must still show that counsel's actions were prejudicial. (*People v. Ledesma*, *supra*, 43 Cal.3d at p. 218.) A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation." (*People v. Williams* (1988) 44 Cal.3d 883, 937; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

2. *Failure to Request a "DNA Only" Jury Instruction*

First, we address defendant's claim that his trial counsel rendered ineffective assistance by failing to request a jury instruction on the sufficiency of the DNA evidence. He argues that case law establishes that a criminal defendant cannot be convicted based solely on DNA evidence found on a moveable object at the crime scene, and the jury should have been instructed accordingly.

6

A "defendant is entitled to have the jury instructed on the law applicable to the evidence he presents." (*People v. Ratliff* (1986) 41 Cal.3d 675, 694.) Based on the evidence presented at trial, defendant claims he was entitled to a jury instruction pursuant to *People v. Arevalo* (2014) 225 Cal.App.4th 612, a case from the Fourth Appellate District that was subsequently ordered depublished. Defendant argues that even though *Arevalo* was depublished, the principles underlying the decision are sound, and that *Arevalo* held that DNA found on a moveable object at the crime scene is not sufficient to support a conviction. However, as defendant himself notes, *Arevalo* was subsequently ordered depublished. Cases that are depublished or unpublished cannot be relied on as authority and should not be relied on by a court or by parties in any action, except for in a narrow set of circumstances, none of which are present here. (Cal. Rules of Court, rule 8.1115.) Any reliance on *Arevalo* is unfounded.

Despite his inability to rely on *Arevalo*, defendant persists in his claim that a jury instruction was warranted. He cites to several cases involving the sufficiency of fingerprint evidence to support a conviction and argues that his case is analogous to these "fingerprint-only" cases because he was convicted based solely on the presence of his DNA on the cigarette butt. Defendant's dependence on these "fingerprint-only" cases should be rejected. None of the cases that defendant cites establishes that a jury should be instructed that a criminal defendant cannot be convicted of a criminal offense based solely on DNA found on a moveable object.

For example, defendant relies on *Birt v. Superior Court* (1973) 34 Cal.App.3d 934 (*Birt*). In *Birt*, the petitioner sought to set aside an information charging her with burglary. She had been charged after her fingerprints were found on a cigarette lighter in a van that was parked near the burglary victim's house. (*Id.* at pp. 936-937.) On appeal, the court concluded that the information must be set aside for lack of probable cause. The court opined that the cigarette lighter was a readily moveable object and the lighter

7

was not shown to have been taken from the victim's home. (*Id*. at p. 938.) Further, there was no other evidence that showed that any of the petitioner's fingerprints were found either inside the burglarized house or on any of the stolen items. (*Ibid*.) Furthermore, the van where the cigarette lighter was found was a rental vehicle that was readily available to the public. (*Ibid*.) Therefore, the court opined that at most, the petitioner's fingerprints on the lighter showed that she had been inside the van at some unknown time and place, and there was no other evidence to indicate where or when. (*Ibid*.) Therefore, "[o]nly by guesswork, speculation, or conjecture can it be inferred that petitioner was inside the van, or in the area, at the time of the . . . burglary." (*Ibid*.)

Defendant also cites to *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*). In *Mikes*, a murder victim was found dead in the basement of his burglarized fix-it shop. Officers determined that the victim had been killed with a post from a disassembled turnstile that the victim had purchased at a hardware store's going out of business sale. (*Id*. at p. 355.) Several fingerprints on the post belonged to defendant. (*Ibid*.) The defendant was convicted of first degree murder, and he filed a federal habeas petition arguing that insufficient evidence supported his conviction. (*Id*. at p. 356.) The fingerprints found on the post were the only pieces of evidence linking the defendant to the crime, and expert testimony had disclosed that fingerprints could last indefinitely. (*Id*. at p. 358.) Therefore, the Ninth Circuit concluded that the evidence was not sufficient to support the conviction, because it was reasonably possible that defendant's fingerprints were placed on the post prior to the victim's purchase of the turnstile. (*Id*. at p. 359.)

Neither *Birt* nor *Mikes* stand for the proposition that in fingerprint-only cases, a specific jury instruction should be given regarding the sufficiency of the fingerprint evidence. These cases simply reiterate the well-established principle that a defendant's conviction must be supported by sufficient evidence. From our review of the record, it

8

appears that the court properly instructed the jury on the sufficiency of evidence to support a conviction, including, but not limited to, an instruction on the presumption of evidence and the requirement of proof beyond a reasonable doubt (CALCRIM No. 220), the definition of evidence (CALCRIM No. 222), the differences between direct and circumstantial evidence (CALCRIM No. 223), reliance on circumstantial evidence (CALCRIM No. 224), the credibility of witnesses (CALCRIM No. 226), and the elements of the offense of burglary (CALCRIM No. 1700).

Additionally, defendant's claim that DNA-only cases are analogous to fingerprint-only cases does not aid him. Contrary to his argument, there have been numerous cases where courts have held that a fingerprint alone can support a burglary conviction if the fingerprint is left inside the structure or on part of the structure with an unusual access. (See, e.g., *People v. Bright* (1967) 251 Cal.App.2d 395; *People v. Corral* (1964) 224 Cal.App.2d 300; *People v. Rodis* (1956) 145 Cal.App.2d 44.)

Additionally, neither *Birt* nor *Mikes* stand for the proposition that fingerprints alone can *never* sustain a conviction. In *Birt*, the court concluded there was insufficient evidence, because the cigarette lighter with the defendant's fingerprints was found in a public rental vehicle parked outside the burglarized home. (*Birt*, *supra*, 34 Cal.App.3d at pp. 936-938.) In *Mikes*, the fingerprint evidence was found on a pole that had previously been accessible to the public since it was part of a turnstile purchased from a hardware store. (*Mikes*, *supra*, 947 F.2d at pp. 355-359.) Under these specific factual scenarios, courts concluded that the fingerprints alone were not sufficient, in part because there was no nexus between the fingerprints and the crime.

However, defendant's case is distinguishable from cases like *Birt* and *Mikes* for a simple and obvious reason. Unlike *Birt* and *Mikes*, defendant's guilt was not established solely by the presence of his DNA at the scene. There was other evidence of his guilt,

9

including Tamara's testimony that the jade pendant found in defendant's possession was one of the items stolen from the house during the burglary.

Defendant argues that the jury should have been advised that if they discounted Tamara's testimony regarding her ownership of the jade pendant, they could not convict him by relying only on the DNA evidence. Defendant claims that such an instruction was necessary, because without it the prosecution was relieved of the burden to prove every element of the crime charged.

We disagree. "Upon request, a trial court must give jury instructions 'that "pinpoint . . . the theory of the defense," ' but it can refuse instructions that highlight ' "specific evidence as such." ' [Citations.] Because the latter type of instruction 'invite[s] the jury to draw inferences favorable to one of the parties from specified items of evidence,' it is considered 'argumentative' and therefore should not be given." (*People v. Earp* (1999) 20 Cal.4th 826, 886.)

Here, any suggested instruction targeting the sufficiency of the DNA evidence would be exclusively and argumentatively devoted to highlighting specific evidence. Accordingly, it would have been futile for defendant's trial counsel to attempt to seek such an instruction. (See *People v. Hughes* (2002) 27 Cal.4th 287, 361.) Furthermore, defendant does not cite to any viable authority holding that DNA alone cannot support a burglary conviction.

In short, defendant's appellate claim of ineffective assistance of counsel fails. His defense counsel's failure to request a jury instruction on "DNA-only" evidence that had no support in the existing law was more than reasonable. Furthermore, the case law cited to by defendant is largely irrelevant to this case, because his conviction was not entirely reliant on the presence of his DNA at the scene. Accordingly, defendant fails to show that his trial counsel did not act in the manner of a reasonably competent attorney.

10

3. *Failure to Call Defendant's Mother as an Alibi Witness*

Next, we address the argument raised in defendant's petition for writ of habeas corpus. In his petition, defendant alleges that his trial counsel rendered ineffective assistance when he failed to call defendant's mother as an alibi witness during the trial.

a. **A Defendant's Burden on a Petition for Writ of Habeas Corpus**

"A habeas corpus petitioner bears the burden of establishing that the judgment under which he or she is restrained is invalid. [Citation.] To do so, he or she must prove, by a preponderance of the evidence, facts that establish a basis for relief on habeas corpus." (*In re Visciotti* (1996) 14 Cal.4th 325, 351.)

"An appellate court receiving [a petition for a writ of habeas corpus] evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. [Citations.] If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an [order to show cause (OSC)]. [Citations.] . . . Issuance of an OSC, therefore, indicates the issuing court's *preliminary assessment* that the petitioner would be entitled to relief if his factual allegations are proved." (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.)

Defendant alleges in his habeas corpus petition that his trial counsel rendered ineffective assistance. As articulated above, to prevail on a claim of ineffective assistance of counsel, defendant must identify those acts or admissions made by his counsel that "fell below an objective standard of reasonableness" and must demonstrate prejudice, that is, that absent his counsel's acts or omissions there was a reasonable probability that the proceedings would have reached a different result. (*People v. Dickey* (2005) 35 Cal.4th 884, 907.) In order to prevail on a claim of ineffective assistance of counsel for failing to call a potential witness, it must be shown that "the testimony of the alleged additional defense witness was material, necessarily, or admissible, or that

11

defense counsel did not exercise proper judgment in failing to call him [or her]." (*People v. Hill* (1969) 70 Cal.2d 678, 690.)

b. **Evidence Supporting Defendant's Petition for Writ of Habeas Corpus**

At trial, defendant testified that he was at home with his mother, Lowe, at the time of the burglary. On cross-examination, defendant was asked if Lowe was present in court that day. Defendant answered that Lowe was in court but was not going to testify regarding his alibi. The prosecutor asked defendant if he thought it was important to have his alibi witness testify under oath that he was at home at the time of the burglary. Defendant answered that he thought it would be important but noted that the GPS data obtained from his car indicated that he was at his house that morning.

To support his petition for writ of habeas corpus, defendant submitted a signed declaration. In his declaration, defendant stated that he and Lowe met with his trial counsel in the months leading to the trial to discuss the case. Defendant said that Lowe told his trial counsel that she was willing to testify that defendant was home with her during the burglary. However, trial counsel told them that Lowe's testimony was unnecessary, since the GPS data obtained from defendant's car indicated that he was not at the victim's house during the burglary. Also attached to the petition is a declaration signed by Lowe, which corroborated defendant's declaration.

Defendant's appellate counsel also submitted a signed declaration. Appellate counsel declared that she contacted defendant's trial counsel and asked him why he did not call Lowe to testify during the trial. Trial counsel answered that he first learned about defendant's alibi during his cross-examination, when defendant asserted that he was with Lowe at the time of the burglary. Trial counsel said that prior to this statement, defendant had only claimed that he was not at the victim's house during the burglary and had not offered any potential alibi witnesses. Trial counsel further explained that he spoke with Lowe at the courthouse after hearing defendant's testimony, and Lowe told him that her

12

son was with her at the time of the burglary and she would be willing to testify. However, trial counsel asserted that he did not call Lowe to testify, because she had been in the courtroom throughout the trial and was not on the witness list. Therefore, it would have been "against the law" to call her as a witness. Trial counsel refused to sign a declaration attesting to the above facts.

c. **Analysis**

In defendant's case, we find that it is necessary to issue an order to show cause returnable on the superior court, because there are factual conflicts in the evidence submitted in support of the habeas corpus petition. Resolution of these factual conflicts are vital to determining whether trial counsel's performance fell below the standard of a reasonably competent professional when he did not call Lowe as a witness.

Defendant and Lowe both declared that trial counsel did not call Lowe as a witness because he believed the GPS data from defendant's car provided an unequivocal alibi. However, as argued by the prosecution during closing argument, the GPS device was attached to defendant's *car*, not his person. Therefore, the GPS data did not foreclose all possibility that defendant was present at the crime scene at the time of the burglary. The GPS data merely indicated that defendant's car was not there. Accordingly, if trial counsel was informed before the trial of defendant's alibi and Lowe's willingness to testify, failure to investigate the alibi or call her as a witness was likely not a reasonable tactical decision.

Trial counsel, however, offers a different version of the facts. In appellate counsel's signed declaration, trial counsel said that he did not learn of defendant's alibi until he was being cross-examined by the People, and by that point in the proceedings Lowe had been present in the courtroom during the rest of the trial and was not on the witness list. Trial counsel could not recall if he asked defendant about an alibi before trial, but noted that he could not call Lowe as a witness that late in the proceedings

13

because doing so would have been "against the law." It is unclear whether trial counsel meant that it would have been unlawful to call Lowe as a witness under section 1054.3, or if doing so would be an unreasonable tactical strategy, because she would have been easily impeachable since she was a close family member and would lack credibility since she had already heard defendant testify regarding the alibi during the cross-examination.[3]

In sum, there are factual disputes in the record regarding *when* trial counsel was told that Lowe was an alibi witness who was ready and willing to testify and *why* trial counsel declined to call her as a witness. These factual disputes are critical to determining whether trial counsel's performance was deficient. Therefore, issuing an order to show cause returnable on the superior court is appropriate, since the court can conduct an evidentiary hearing and determine what happened below.

---

[3] Lowe would not necessarily have been precluded from testifying. Section 1054.3, subdivision (a)(1) requires that a defendant and his or her attorney disclose to the prosecution the names and addresses of all witnesses that will be called at trial. Absent good cause, the disclosure of all witnesses must be made at least 30 days before trial. (§ 1054.7.) If discovery obligations are not met, the trial court can make any order necessary in order to enforce these obligations, "including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).) However, "[t]he court may prohibit the testimony of a witness pursuant to [section 1054.5, subdivision (b)] only if all other sanctions have been exhausted." (*Id.*, subd. (c).) Therefore, preclusion of Lowe's testimony would have been appropriate only if the trial court had exhausted all other available sanctions, such as advising the jury of the late disclosure or granting a continuance. Additionally, it is permissible for witnesses at a trial to be present during the entirety of the trial. Evidence Code section 777 grants a trial court *discretion* to exclude from the courtroom any witnesses that are not under examination so that witnesses cannot hear the testimony of other witnesses. However, the making of such an order is not a right; it is a discretionary choice by the trial court. (*People v. Bales* (1961) 189 Cal.App.2d 694, 702.)

14

The People argue that there is no need for this court to issue an order to show cause, because defendant has failed to demonstrate prejudice. We disagree.

The evidence against defendant was strong but not overwhelming. Defendant's DNA was found on the cigarette butt inside the burglarized home, but the item was small and moveable. Although Tamara claimed that the jade pendant found in defendant's possession was one of the items stolen during the burglary, defendant furnished a receipt for a jade pin and insisted that he purchased the item himself as a gift to his daughter. The piece of jewelry was also not listed on the claims Tamara and John submitted to their insurance company. Additionally, the prosecutor questioned defendant on cross-examination about why his mother was not going to testify to confirm his alibi. There were no witnesses placing defendant at the scene of the crime, and the GPS data obtained from his car indicated, at the least, that his car was not present. Lowe's testimony corroborating defendant's alibi, if credible, would have had some evidentiary value.

We emphasize that in a habeas corpus proceeding alleging ineffective assistance of counsel, a "reasonable probability" for the prejudice prong of our analysis does *not* mean that a favorable outcome would have been more likely. Rather, the more favorable outcome must be sufficiently likely to undermine our confidence in the conviction. (*In re Fields* (1990) 51 Cal.3d 1063, 1078.)

Further, we do not mean to say that trial counsel's actions were definitively unreasonable and prejudicial. For example, after holding an evidentiary hearing on the matter, the trial court may determine that mother's testimony is not credible. If that is the case, then no prejudice would have occurred. However, when evaluating defendant's claim on appeal we have no way of evaluating the credibility of a witness and we must assume the facts alleged in the petition are true. After applying this standard of review, we conclude that based on the record before us, defendant has sufficiently stated a prima

15

facie case that he is entitled to relief.  Whether his petition for writ of habeas corpus has merit is an issue for determination in the first instance by the trial court.

## DISPOSITION

The judgment is affirmed.  With respect to defendant's habeas corpus petition, let an order to show cause issue returnable before the Monterey County Superior Court.

_____
                      Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.